UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DAVID G. DANIELS,

                                Plaintiff,                DECISION AND ORDER

-vs-

                                              19-CV-6421 (CJS)

AARON'S, INC.,

                          Defendant.

_____

## INTRODUCTION

This is an action brought by *pro se* Plaintiff David G. Daniels ("Daniels") against his former employer, Defendant Aaron's, Inc. ("Aaron's"), for discrimination in employment pursuant to the Age Discrimination in Employment Act of 1967 ("ADEA"), codified at 29 U.S.C. § 621–634.  The matter is presently before the Court on Defendant's motion to stay the action and compel arbitration.  Mot., Dec. 23, 2019, ECF No. 7.  For the reasons that follow, Defendant Aaron's, Inc.'s motion [ECF No. 7] is granted and the matter is stayed pending the outcome of arbitration proceedings.

## BACKGROUND

The following facts are taken from Daniels' complaint ("Compl."), the sworn declaration of Vicki Winston, Director of Human Resources and acting Records Custodian for Aaron's ("Winston Decl."), and three documents attached as exhibits to Winston's declaration: Aaron's "Agreement to Arbitrate," Daniels' consent to utilize Aaron's electronic signature system, and an "Arbitration Agreement Acknowledgment" with Daniels' electronic signature.  The facts drawn from Daniels' complaint are not findings of fact by the Court, but rather assumed to be true for the purpose of deciding this motion

and construed in the light most favorable to Daniels, the non-moving party. *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016). Further, as Daniels is a *pro se* litigant, the Court reads his papers liberally, interpreting them to raise the strongest arguments that they suggest. *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994).

Born in June 1961, Daniels was hired as a manager in training by SEI Aaron's[1] in August 2015, when he was 54 years old. Am. Compl., ¶ 3, Jul. 19, 2019, ECF No. 4. Prior to joining SEI Aaron's, Daniels had over thirty years of management experience. Am. Compl. at ¶ 16. Daniels was promoted to customer accounts manager at the Elmira store in July 2016, and then further promoted to general manager of the Hornell store in January 2017. Am. Compl. at ¶ 4. Daniels alleges that he was the subject of age discrimination beginning in March 2017, when he had a heated after-hours exchange with his district manager, James DeLaurentis. Am. Compl. at ¶ 6. After denying Daniels' request for time-off, DeLaurentis told Daniels that the work was a "young man's game," and that if DeLaurentis had been district manager at the time, he never would have hired Daniels in the first place. *Id.* In May 2017, Daniels left the general manager position at the Hornell store and returned to his position as a customer accounts manager at the Elmira store. Am. Compl. at ¶ 3.

In August of 2017, Aaron's, Inc. acquired the assets of SEI Aaron's, and took over all personnel matters. Winston Decl., ¶ 5, Dec. 23, 2019, ECF No. 7-1. As a new employee of Aaron's, Inc. – as were all former SEI Aaron's employees – Daniels completed an on-line employment application and executed several documents in the Aaron's "Onboarding portal." Winston Decl. at ¶ 7–9, 15. According to Winston, Daniels electronically signed

---

[1] "SEI Aaron's" is not the defendant in this action. "SEI Aaron's" is the name of a distinct entity that was purchased by Aaron's, Inc. in August of 2017. Am. Compl. at ¶ 3.

an "Electronic Signature Acknowledgment" and "Arbitration Agreement Acknowledgment" on August 28, 2017.  Winston Decl. at ¶ 15.  Section 1 of the Arbitration Agreement, entitled "Duty to Arbitrate," provided that "[b]y signing this Agreement, [the employee] and the Company each agree that all Claims between [the employee] and the Company will be exclusively decided by arbitration governed by the Federal Arbitration Act before one neutral arbitrator . . . ."  Winston Decl. (Ex. 1), § 1.  Further, Section 4 of the agreement specified that "covered claims" include:

> all disputes between [the employee] and the Company, including but not limited to . . . . any claim arising under federal, state or local law, under a statue such as . . . the Age Discrimination in Employment Act . . . .

Winston Decl. (Ex. 1), § 4.

Should an employee object to the terms of the Arbitration Agreement, Section 17 provided the "Right to Opt-Out."  That section reads, in pertinent part:

> If you do not wish to be bound by the terms of this Agreement, you must opt out by notifying the Company in writing, using the Company's designated opt-out form . . . [Y]ou must fully complete and submit the opt-out form within thirty (30) days of the date on which the Company published this Agreement to you electronically (the "Opt-Out Period") . . . .
>
> Should you choose to opt out as provided in this paragraph, you will not be subject to any adverse employment action as a consequence of that decision and you may pursue available legal remedies without regard to this Agreement.

Winston Decl. (Ex. 1), § 17.  It is undisputed that Daniels did not complete or submit an opt-out form.

On December 7, 2017, Daniels called the Aaron's Associate Care Hotline to report his concerns about age discrimination, and several days later spoke directly with a company representative.  Am. Compl. at ¶ 12.  He followed up with a written statement on January 2, 2018.  *Id.*  On January 24, 2018, Daniels also submitted his first inquiry

3

with the Equal Employment Opportunity Commission.  Am. Compl. at ¶ 15.

On March 12, 2018, Daniels contacted the Aaron's regional manager and the vice president in charge of the New England region about his discrimination concerns.  Am. Compl. at ¶ 16.  A company representative was assigned to investigate the matter, and on April 5, 2018, the representative contacted Daniels to inform him that his allegations could not be corroborated.  *Id.*  On April 6, 2018, Daniels met with DeLaurentis and the regional manager about his age discrimination concerns.  *Id.*  During that meeting, Daniels also inquired why he was not informed of, or considered for, a general manager position that had recently been filled.  *Id.*  He was told that he would not be considered for such a position because he did not have what it takes to be a successful general manager.  *Id.*

The stress of his situation caused Daniels several serious health issues that led him to take medical leave from April 10, 2018 to June 4, 2018.  Am. Compl. at ¶ 17. Daniels again went out on medical leave from September 10, 2018 to November 12, 2018. Am. Compl. at ¶ 3.  Daniels resigned his position with Aaron's on November 13, 2018. *Id.*

Daniels received his "right to sue" notification from the Equal Employment Opportunity Commission on March 12, 2019.  Am. Compl. at ¶ 22.  In June 2019, he filed the present age discrimination action.  He alleges that Aaron's discriminated against him by passing him over for promotion seven times, and in six of those seven times, hiring candidates under forty years of age and with lesser qualifications.  Am. Compl. at ¶ 20. Daniels also alleges that he was subjected to retaliation after formally complaining of age discrimination through company channels in December 2017.  Am. Compl. at ¶ 21.

4

Aaron's moves this Court to stay Daniels' action and to compel arbitration.  Mot., ECF No. 7.  Aaron's argues that Daniels "signed a valid, binding agreement to arbitrate all claims against Aaron's and should be compelled to comply with that agreement."  *Id.*

LEGAL STANDARD

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, reflects a liberal policy favoring enforcement of arbitration agreements and grants district courts authority to compel arbitration where the parties have agreed to arbitrate.  *See* 9 U.S.C. § 4; *see also Garten v. Kurth*, 265 F.3d 136, 142 (2d Cir. 2001) ("It is well-settled that the FAA generally requires that courts resolve issues of arbitrability in favor of arbitration.")  The FAA also grants authority to district courts to stay an action commenced in federal court pending the outcome of arbitration.  *See* 9 U.S.C. § 3.

In determining whether to compel arbitration, the Second Circuit has directed district courts to consider four factors: (1) whether there has been an agreement to arbitrate; (2) whether the scope of the arbitration agreement covers the dispute at issue; (3) if federal statutory claims exist, whether Congress intended those claims to be non-arbitrable; and (4) if only some of the claims are subject to arbitration, whether the court should stay the remaining claims pending arbitration.  *JLM Indus. v. Stolt–Nielsen SA*, 387 F.3d 163, 169 (2d Cir. 2004).

Three of the Second Circuit's four factors are not in dispute.  First, the arbitration agreement, provided that it is binding, expressly incorporates claims under the ADEA. Winston decl. (Ex. 1) at § 4.  Second, the United States Supreme Court has found that Congress did not intend federal statutory claims under the Age Discrimination in Employment Act to be non-arbitrable.  *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S.

20, 35 (1991). Third, should the Court compel arbitration of Daniels' age discrimination claims, there are no "remaining claims" to stay pending arbitration. Hence, the Court is left to explore only one of the Second Circuit's four factors: whether the parties entered into a contractually binding arbitration agreement. 9 U.S.C. § 4; *Whitehaven S.F., LLC v. Spangler*, 633 Fed. Appx. 544, 545–46 (2d Cir. 2015) (citing *Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel*, 346 F.3d 360, 365 (2d Cir. 2003)).

"The standard this [c]ourt must apply when reviewing a motion to compel arbitration is essentially the same standard that the Court applies when it reviews a motion for summary judgment." *D'Antuono v. Serv. Rd. Corp.*, 789 F. Supp.2d 308, 319 (2d Cir. 2011) (citing *Bensadoun v. Jobe–Riat*, 316 F.3d 171, 175 (2d Cir. 2003)). The party moving for an order to compel arbitration must substantiate its entitlement to arbitration by a showing of evidentiary facts that support its claim that the other party agreed to arbitration. *Oppenheimer & Co., Inc. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir.1995). Where the moving party succeeds in substantiating its claim, the non-moving party "may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried." *Molina v. Coca-Cola Enterprises, Inc.*, No. 08-CV-6370, 2009 WL 1606433, at *5 (W.D.N.Y. June 8, 2009) (quoting *Oppenheimer & Co., Inc.*, 56 F.3d at 358) (internal quotation marks omitted). "Only when there is no genuine issue of fact concerning the formation of the agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement." *D'Antuono*, 789 F. Supp.2d at 320 (citation omitted).

## ANALYSIS

Daniels opposes Aaron's motion to compel arbitration on three grounds: (1) he does

not recall or admit to having signed the arbitration agreement, (2) he claims the arbitration agreement was part of an "unconscionable contract," and (3) his papers suggest that Aaron's waived the right to compel arbitration by failing to assert that right both during the internal investigation conducted by the company into discrimination, and during the EEOC investigation.  Resp., 1–2, Jan. 24, 2020, ECF No. 10.  The Court finds no merit in any of Daniels' three arguments.

<u>The evidence demonstrates a valid arbitration agreement</u>.

The Court's inquiry into whether the parties entered into an arbitration agreement is controlled by state contract law.  *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Under contract law in New York,[2] the party seeking to compel arbitration bears the burden of proving the existence of a valid arbitration agreement by a preponderance of the evidence.  *Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional de Venezuela*, 991 F.2d 42, 46 (2d Cir. 1993).  Once the moving party has met that burden, the party challenging the existence of an agreement must make "an unequivocal denial that the agreement had been made . . . and some evidence should [be] produced to substantiate the denial."  *Interocean Shipping Co. v. Nat'l Shipping & Trading Corp.*, 462 F.2d 673, 676 (2d Cir. 1972) (citation omitted).  *See also*, *Barrows v. Brinker Rest. Corp.*, No. 519CV144GLSATB, 2020 WL 1511077, at *2 (N.D.N.Y. Mar. 30, 2020) (citing, *inter alia*, *Denney v. BDO Seidman, L.L.P.*, 412 F.3d 58, 67–68 (2d Cir. 2005)).

---

[2] The Arbitration Agreement does not appear to have a choice of law provision. Thus, the controlling law would be the contract's "center of gravity," which typically is the place of contracting or performance.  *See, e.g., TCA Television Corp. v. McCollum*, 839 F.3d 168, 188 (2d Cir. 2016).  In this case, the contract was executed in New York.  The controlling law is not disputed by either party, and Aaron's briefs cite New York law.

In the present case, Aaron's has shown by a preponderance of the evidence that the parties entered into a binding arbitration agreement. As indicated above, Aaron's motion is accompanied by a sworn declaration of its human resources manager, Vicki Winston, who provided a thorough explanation of the on-boarding process and documents bearing Daniels' electronic signature. According to Winston, it is standard practice that once an employee enters his or her "Onboarding portal," the employee must complete an Electronic Signature Acknowledgment agreeing to enter into agreements electronically. Winston Decl. at ¶ 11. Winston provided a copy of Daniels' executed Electronic Signature Acknowledgment, dated August 28, 2017. Winston Decl. (Ex. 2).

Winston further stated that once an employee has completed the Electronic Signature Acknowledgment, that employee will then be "offered" the task of completing the Arbitration Agreement Acknowledgement. Winston Decl. at ¶ 12. That task consists of clicking a link to the "Aaron's Arbitration Agreement" and viewing the full agreement to arbitrate, which the employee can download or print. *Id.* After reading the agreement, the employee can then type his or her e-signature to indicate agreement, or opt-out by clicking the link to the opt out form. Winston Decl. at ¶ 12–13. Winston provided a copy of Daniels' executed Arbitration Agreement Acknowledgment, dated August 28, 2017. Winston Decl. (Ex. 3).

For his part, Daniels states that he "does [not] recall and admit" signing the Arbitration Agreement. Resp. at 1. He notes that as a graduate of LeMoyne College with a degree in Labor Relations, he is familiar with the arbitration process and would have utilized it if he had realized it was an option. *Id.* Daniels admits to participating in a "one-on-one" hiring session on August 28, 2017, but states the company's "main concern

8

[at the session] was to quickly disseminate information about the acquisition, and have the portal set up so that the application could be completed plus sign off on information about benefits, and trainings." *Id.* Finally, Daniels observes that at no time during its internal investigation of his complaints or of the investigation by the EEOC did Aaron's ever mention an arbitration process. Resp. at 2. Daniels suggests this is evidence the arbitration agreement did not exist. *Id.*

The Court finds that Daniels' arguments lack merit. To begin with, under New York law, Daniels' failure to recall signing the arbitration agreement does not absolve him from his contractual obligations, or necessarily create a triable issue of fact. *Kutluca v. PQ New York Inc.*, 266 F. Supp.3d 691, 701–02 (S.D.N.Y. 2017) (citing *Vardanyan v. Close–Up Int'l, Inc.*, 315 Fed. Appx. 315, 317–18 (2d Cir. 2009)). Moreover, Aaron's attached Daniel's executed "Arbitration Agreement Acknowledgment," which clearly carries his electronic signature. Winston Decl. (Ex. 3). There is nothing in the record, other than Daniels' bald assertions, that suggests this document is anything other than it appears to be. *Gonder v. Dollar Tree Stores, Inc.*, 144 F. Supp.3d 522, 527–28 (S.D.N.Y. 2015). Daniels' suggestions that Aaron's failed to mention the arbitration in earlier proceedings because the document did not exist is a mere theory unsupported by evidence. *See, e.g., Rodriguez v. Hahn*, 209 F. Supp.2d 344, 348 (S.D.N.Y. 2002) (stating that, under the summary judgment standard, "a *pro se* party's bald assertions unsupported by evidence, are insufficient to overcome" substantiated claims by the moving party).

Accordingly, the Court finds the parties are subject to a binding arbitration agreement.

The arbitration agreement was not unconscionable.

In the alternative, Daniels argues that arbitration cannot be enforced because his employment contract with Aaron's was an unconscionable contract.  Resp., ECF No. 10 at 2.  He notes that "[i]f a court finds that the employment agreement is an unconscionable contract, the court can refuse to enforce the arbitration clause," and cites three cases[3] for the proposition that a contract is unconscionable if there is no real bargaining power, no real negotiation and an absence of meaningful choice.

As a preliminary matter, it should be noted that Daniels' characterization of the arbitration agreement as an employment contract is inaccurate.  The agreement attached to Winston's declaration is a stand-alone contract, and does not include any of the terms standard to an employment contract such as compensation, duration, termination, etc. Winston Decl. (Ex. 1).  In fact, Section 17 of the agreement specifically contemplates continued employment in the event that an employee does not consent to the arbitration agreement.  Winston Decl. (Ex. 1) at § 17 (providing a detailed procedure for opting out).

More to the point, Daniels fails to show that the arbitration agreement is procedurally unconscionable.[4]  As the Second Circuit recently observed, it is well-settled under New York law that:

> the procedural element of unconscionability requires an examination of the contract formation process and the alleged lack of meaningful choice. The focus is on such matters as the size and commercial setting of the transaction, whether deceptive or high-pressured tactics were employed, the use of fine print in the contract, the experience and education of the

---

[3] Though his citations were not complete, it appears Daniels was citing to *Ellis v. McKinnon Broad. Co.*, 23 Cal. Rptr.2d 80 (Cal Ct. App. 1993) *Am. Software, Inc. v. Ali*, 54 Cal. Rptr.2d 477 ( Cal. Ct. App. 1996); and *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001).  The former two cases were applications of California state law, and the Supreme Court case held that only the employment contracts of transportation workers identified in § 1 of the FAA are exempt from the FAA's provisions.

[4] There is also a substantive component to unconscionability, but Daniels does not allege that the agreement is "unreasonably favorable" to Aaron's.  *See Sablosky v. Edward S. Gordon Co.*, 535 N.E.2d 643, 647 (N.Y. 1989).

party claiming unconscionability, and whether there was disparity in bargaining power.

*Am. Family Life Assurance Co. of New York v. Baker*, 778 F. App'x 24, 26–28 (2d Cir. 2019) (quoting *Gillman v. Chase Manhattan Bank, N.A.*, 534 N.E.2d 824, 828 (N.Y. 1988) (internal citations omitted)).

Applying the above standard, the Court concludes that Daniels has failed to supply sufficient evidence of procedural unconscionability. The agreement attached to Ms. Winston's declaration is not a "take-or-leave-it" agreement, but rather provides a clear process for opting out that does not subject the employee to any penalty. Further, there is no evidence of "high-pressure tactics" in the execution of the agreement, or of deceit, undue ambiguity, or tricky "fine print" in its construction. The evidence indicates that just above the link to the agreement in the "Onboarding portal" there is a note, in all capital letters, stating, "PLEASE CLICK ON THE LINK AND CAREFULLY READ BEFORE SIGNING," and the agreement remains on the portal after execution for the employee to review, download or print at any time. Winston Decl. at ¶ 12, 14. Lastly, Daniels admits to a college degree in Labor Relations and over thirty years of management experience, so he cannot claim a lack of education.

Aaron's did not waive the agreement.

Finally, as evidence that the arbitration agreement did not exist, Daniels points to Aaron's failure to bring the arbitration agreement to his attention during EEOC investigations and the internal investigations the company conducted into his complaints. However, as noted above, the Court finds that the parties are subject to a binding arbitration agreement. Nevertheless, because the Court must construe Daniels' papers to present the strongest arguments they suggest, this Court will also consider

11

whether Aaron's conduct constitutes a waiver of Aaron's right to compel arbitration under the agreement.

The Second Circuit has directed district courts to consider three factors to determine whether a party has waived its right to arbitration: (1) the time elapsed from when litigation was commenced until the request for arbitration; (2) the amount of litigation to date, including motion practice and discovery; and (3) proof of prejudice. *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 229 (2d Cir. 2001).  With respect to the first and second factors, just slightly more than three weeks elapsed between the time that Daniels served Aaron's (Nov. 30, 2019), and Aaron's motion to compel.  *See* Summons, Dec. 4, 2019, ECF No. 6; Mot., Dec. 23, 2019, ECF No. 7.  There was no additional motion practice, and no discovery.  *Id.*

Most importantly, despite Aaron's failure to raise the possibility of arbitration during prior internal investigations and EEOC proceedings, there is no indication that Daniels suffered any prejudice.  Ordinarily, courts only find waiver "when the party against whom waiver is asserted has engaged in substantial litigation activity resulting in prejudice to the party asserting waiver." *Brownstone Inv. Group v. Levey*, 514 F.Supp.2d 536, 550 (S.D.N.Y.2007). With regards to "prejudice," the Second Circuit has determined that the term, "refers to the inherent unfairness—in terms of delay, expense, or damage to a party's legal position—that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue . . . ."  *PPG Indus., Inc. v. Webster Auto Parts, Inc.*, 128 F.3d 103, 107 (2d Cir. 1997) (internal citations omitted).

None of that occurred here.  Indeed, there is nothing in the record to suggest that the Company's internal investigation was anything more than an inquiry into the truth

of Daniels' claims.   Further, the EEOC proceedings were initiated by Daniels, not Aaron's.   An "employer's failure to initiate arbitration during the pendency of [EEOC] proceedings [against it] merely reflects a desire to avoid inefficiency and is not action inconsistent with a desire to arbitrate." *Santos v. GE Capital*, 397 F. Supp.2d 350, 356 (D. Conn. 2005) (quoting *Marie v. Allied Home Mortg. Corp.*, 402 F.3d 1, 16 (1st Cir. 2005)).   *See also Brown v. Coca-Cola Enterp., Inc.*, 08-CV-3231 (JFB)(ETB), 2009 WL 1146441 at *12 (E.D.N.Y. Apr. 28, 2009) (collecting cases).

Consequently, the Court finds that Aaron's did not waive its rights to compel arbitration under the arbitration agreement.

## CONCLUSION

Defendant Aaron's, Inc. having substantiated its entitlement to arbitration, and Plaintiff Daniels having failed to identify or introduce any evidence raising a dispute of material fact, it is hereby

ORDERED that Defendant Aaron's, Inc.'s motion to compel arbitration [ECF No. 7] is granted, and it is further

ORDERED that this matter is stayed pending the outcome of arbitration.

SO ORDERED.

Dated:      September 30, 2020
                Rochester, New York


                                                        */s/ Charles J. Siragusa*
                                                        CHARLES J. SIRAGUSA
                                                        United States District Judge